**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| David Smith,<br><br>    Petitioner,<br><br>v.<br><br>C. Howard, Warden,<br><br>    Respondent. | No. CV-21-0133-TUC-SHR (BGM)<br><br>**ORDER** |

Currently pending before the Court is Petitioner David Smith's *pro se* Petition Under 28 U.S.C. § 2241 for a Writ of Habeas Corpus by a Person in Federal Custody ("Petition") (Doc. 1). Respondents have filed a Return and Answer to Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241 and Motion to Dismiss Petition ("Answer") (Doc. 12).[1] Petitioner filed a Response to Respondent's Motion to Dismiss (Doc. 14), which the Court will construe as a reply.[2] The Petition is ripe for adjudication.

**I. PROCEDURAL BACKGROUND**

At the time Petitioner filed his Petition (Doc. 1), Petitioner was an inmate incarcerated at the United States Penitentiary in Tucson, Arizona ("USP–Tucson"). *See* Petition (Doc. 1). Currently, Petitioner remains incarcerated at USP–Tucson. *See* Fed.

---

[1] On June 24, 2021, the Court entered its Order indicating that it would "construe the motion to dismiss as argument within the Answer, not a separate motion." Order (Doc. 16).

[2] The Court deemed Petitioner's response (Doc. 14) as timely and granted him additional time to file a reply to Respondent's Answer. Order (Doc. 16). Petitioner did not file an additional reply.

Bureau of Prisons ("BOP") Inmate Locater, https://www.bop.gov/inmateloc/ (last visited March 23, 2022). Petitioner is serving a 72-month sentence for wire fraud and using a facility in interstate commerce to induce a minor to engage in sexual activity in violation 18 U.S.C. §§ 1343 & 2422(B). *See* Response (Doc. 12) Estrada Decl. (Exh. "A"), Inmate Data (Attach. "1") at 10–11.[3] Petitioner's projected release date is November 25, 2022. *See* Fed. BOP Inmate Locater, https://www.bop.gov/inmateloc/ (last visited March 23, 2022). On March 29, 2021, Petitioner filed a Petitioner Under 28 U.S.C. § 2241 for a Writ of Habeas Corpus by a Person in Federal Custody. *See* Petition (Doc. 1). Petitioner challenges disciplinary convictions that resulted in his loss of good time credits. *See id.* Petitioner alleges that disciplinary charges were brought in retaliation and due process violations during the disciplinary process resulted in the disallowance of twenty-seven (27) days of good time credits. *See id.* Petitioner requests this Court order Respondent to expunge the disciplinary violations and return the twenty-seven (27) days of good time credits, or in the alternative remand the matter for another hearing with additional evidence that Petitioner alleges demonstrates his innocence. *See id.*

## II.   FACTUAL BACKGROUND

On August 4, 2020, at approximately 12:00 p.m., Special Investigative Support ("SIS") Technician K. Lagro "became aware of a U.S. Mail abuse/circumvention incident involving inmate David Smith-Garcia, Reg. No. 07954-043[.]" Response (Doc. 12), Estrada Decl. (Exh. "A"), Incident Report No. 3421764 (Attach. "2") (Doc. 12-1) at 25. SIS Technician Largo reviewed mail addressed to another inmate, with a return address of Petitioner's mother. *Id.*, Exh. "A," Attach. "2" at 25; Petition (Doc. 1) at 4, 6. SIS Technician Lagro alleges that "[t]he letter utilizes code to describe current news of a USP Tucson Housing Unit and Cell Assignments." Response (Doc. 12), Exh. "A," Attach. "2" at 25. SIS Technician Lagro identified "Inmate David Smith-Garcia, Reg. No.

---

[3] Page citations refer to the Case Management/Electronic Case Files ("CM/ECF") page number for ease of reference.

07954-043, . . . as the actual writer of this letter, with the intended receiver being inmate [redacted] assigned to separate housing unit at USP Tucson, via the letter being re-sent from an out-side [sic] source." *Id.* SIS Technician Lagro noted that "[a]buse of the mail for abuses other than criminal activity which circumvents mail monitoring procedures, is a violation of Bureau of Prisons Policy." *Id.* Accordingly, SIS Technician Lagro charged Petitioner with the prohibited act of Mail Abuse, Disrupt Monitoring in violation of Code 296. *Id.*

The same day, Lieutenant S. Pfeiffer delivered the incident report to Petitioner. *Id.* Lt. Pfeiffer also investigated the incident and advised Petitioner of his rights. Response (Doc. 12), Estrada Decl. (Exh. "A"), Incident Report No. 3421764 (Attach. "2") (Doc. 12-1) at 27. Petitioner indicated that he understood those rights. *Id.* During Lt. Pfeiffer's investigation, Petitioner declined to make a statement and displayed a fair attitude. *Id.* Petitioner did not request a witness. *Id.* Lt. Pfeiffer concluded that "[b]ased on the body of the written report, and supporting documentation, I find the report sufficient evidence to support the charges as filed" and forwarded the report to the Unit Discipline Committee ("UDC") for further disposition. *Id.*

On August 6, 2020, the UDC conducted its hearing. Response (Doc. 12), Estrada Decl. (Exh. "A"), Incident Report No. 3421764 (Attach. "2") (Doc. 12-1) at 26. Petitioner indicated that "he ha[d] nothing to say to the UDC, but w[ould] talk to the [Discipline Hearing Officer ("DHO")]." *Id.* Petitioner also requested that the video be reviewed. *Id.* The UDC referred the matter to the Discipline Hearing Officer ("DHO") for further hearing, and if Petitioner was found guilty, appropriate sanctions. *Id.* The UDC also provided Petitioner with a Notice of Discipline Hearing Before the (DHO) and his rights at that hearing. Response (Doc. 12), Exh. "A," Attach. "2" at 28–29. Petitioner indicated that he did not wish to have a staff representative at his DHO hearing or have any witnesses. *Id.*, Exh. "A," Attach. "2" at 29.

On August 12, 2020, Petitioner had a DHO hearing before DHO A. Estrada. *See* Response (Doc. 12), Estrada Decl. (Exh. "A"), Discipline Hearing Officer Rpt., Incident

Rpt. No. 3421764 (Attach. "2") (Doc. 12-1) at 21–24. DHO Estrada noted that on August 6, 2020, staff member B. Byler had advised Petitioner of his rights before the DHO, and he indicated that he understood those rights. *Id.*, Exh. "A," Attach. "2" at 21–22, 28. DHO Estrada further noted that Petitioner waived his right to a staff representative. *Id.* at 21–22. DHO Estrada confirmed that Petitioner had not requested any witnesses. *Id.* at 22. Petitioner stated that he "didn't send that envelope." *Id.* at 21.

DHO Estrada considered the facts presented in the body of the written report; Petitioner's statement; the contents of the letter at issue; and the supporting documentation which included TRUFONE and TRUVIEW reports. *Id.* at 22–23. DHO Estrada that the "TRUVIEW reports show that [redacted] is listed as your mother, and she is located in Vicksburg, Mississippi (the location of the postmark on the envelope)." Response (Doc. 12), Exh. "A," Attach. "2" at 23. DHO Estrada observed that "[t]he contents of the letters do not support a letter coming from your mother to inmate [redacted] as they specifically reference being in an extended lockdown, writing your mom a bunch of times and also stating 'it's been over two weeks since I've heard from my mom'." *Id.* DHO Estrada opined "[i]f this letter was from your mom, it is not logical that she would write this content in a letter." *Id.* DHO Estrada also observed that "the letter states 'I love and miss you[,] I would give anything to be able to lay down on your chest and have you hold me.'" *Id.* DHO Estrada commented that "[t]his content supports this letter was written by you, and you attempted to send this letter by indirect means in an attempt for inmate [redacted] to receive it." *Id.* Accordingly, DHO White determined that Petitioner "committed the prohibited act of Code 296–Use of the mail for abuses other than criminal activity which circumvent mail monitoring procedures." Response (Doc. 12), Exh. "A," Attach. "2" at 23–24. DHO Estrada imposed sanctions of twenty-seven (27) days disallowed good conduct time ("GCT"); thirty (30) days loss of e-mail privileges; and thirty (30) days loss of commissary privileges. *Id.*, Exh. "A," Attach. "2" at 24. On August 25, 2020, DHO Estrada signed the DHO report, and it was delivered to Petitioner on August 27, 2020. *Id.*

On August 31, 2020, Petitioner filed his Regional Administrative Remedy Appeal regarding Incident Report No. 3421764. Petition (Doc. 1), Reg'l Admin. Remedy Appeal (Doc. 1-1) at 1. On November 23, 2020, Regional Director M. Rios denied Petitioner's requested relief. Petition (Doc. 1), Rios Ltr. (Doc. 1-1) at 3. On January 4, 2021, Petitioner filed a Central Office Administrative Remedy Appeal to the Director. Petition (Doc. 1), Cent. Off. Admin. Remedy Appeal (Doc. 1-1) at 9. The record does not reflect a response was issued.

## II.   ANALYSIS

### A. *Jurisdiction—In General*

"Federal courts are always 'under an independent obligation to examine their own jurisdiction,' . . . and a federal court may not entertain an action over which it has no jurisdiction." *Hernandez v. Campbell*, 204 F.3d 861, 865 (9th Cir. 2000) (quoting *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990)). "Generally, motions to contest the legality of a sentence must be filed under § 2255 in the sentencing court, while petitions that challenge the manner, location, or conditions of a sentence's execution must be brought pursuant to § 2241 in the custodial court." *Id.* at 864. Therefore, before proceeding to any other issue a court must establish whether a habeas petition is filed pursuant to § 2241 or § 2255 to determine whether jurisdiction is proper. *Id.* at 865.

Here, Petitioner does not claim that the sentencing court imposed an illegal sentence; rather he seeks relief with respect to disciplinary proceedings while incarcerated at a federal facility. As such, Petitioner is challenging the manner, location, or condition of the execution of his sentence. *See e.g., Rogers v. United States*, 180 F.3d 349 (1st Cir. 1999) (Section 2241 petition is appropriate vehicle to challenge the correctness of a jail-time credit determination, once administrative remedies have been exhausted); *Nettles v. Grounds*, 830 F.3d 922, 927 (9th Cir. 2016) (en banc), ("[c]hallenges to the validity of any confinement or to the particulars affecting its

duration are the province of habeas corpus[.]" (quoting *Muhammad v. Close*, 540 U.S. 749, 750, 124 S. Ct. 1303, 158 L. Ed. 2d 32 (2004)); *Tucker v. Carlson*, 925 F.2d 330, 332 (9th Cir. 1991) (a prisoner's challenge to the "manner in which his sentence was executed . . . [is] maintainable only in a petition for habeas corpus filed pursuant to 28 U.S.C. § 2241"). Such a challenge must be brought pursuant to § 2241 in the custodial court. At the time of filing the Petition, Petitioner was incarcerated at USP – Tucson in Arizona. Accordingly, this Court has jurisdiction over this matter. *Francis v. Rison*, 894 F.2d 353 (9th Cir. 1990).

### B. Exhaustion

#### 1. In General

The Ninth Circuit Court of Appeals has stated:

> [28 U.S.C. § 2241] does not specifically require petitioners to exhaust direct appeals before filing petitions for habeas corpus. [Footnote omitted.] However, we require, as a prudential matter, that habeas petitioners exhaust available judicial and administrative remedies before seeking relief under § 2241.

*Castro-Cortez v. INS*, 239 F.3d 1037, 1047 (9th Cir. 2001), *abrogated on other grounds by Fernandez-Vargas v. Gonzales*, 548 U.S. 30, 126 S. Ct. 2422, 165 L. Ed. 2d 323 (2006). "The requirement that federal prisoners exhaust administrative remedies before filing a habeas corpus petition was judicially created; it is not a statutory requirement." *Brown v. Rison*, 895 F.2d 533, 535 (9th Cir. 1990), *overruled on other grounds by Reno v. Koray*, 515 U.S. 50, 54–55, 115 S. Ct. 2021, 2023–24, 132 L. Ed. 2d 46 (1995). "Nevertheless, '[p]rudential limits like jurisdictional limits and limits on venue, are ordinarily not optional.'" *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007) (alterations in original) (quoting *Castro-Cortez v. INS*, 239 F.3d 1037, 1047 (9th Cir. 2001), *abrogated on other grounds by Fernandez-Vargas v. Gonzales*, 548 U.S. 30, 126 S. Ct. 2422, 165 L. Ed. 2d 323 (2006)).

"Courts may require prudential exhaustion if '(1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2)

relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.'" *Id.* (quoting *Noriega-Lopez v. Ashcroft*, 335 F.3d 874, 881 (9th Cir. 2003)). "When a petitioner does not exhaust administrative remedies, a district court ordinarily should either dismiss the petition without prejudice or stay the proceedings until the petitioner has exhausted remedies, unless exhaustion is excused." *Leonardo v. Crawford*, 646 F.3d 1157, 1160 (9th Cir. 2011) (citations omitted). Exhaustion may be excused if pursuing an administrative remedy would be futile. *Fraley v. United States Bureau of Prisons*, 1 F.3d 924, 925 (9th Cir. 1993).

If a prisoner is unable to obtain an administrative remedy because of his failure to appeal in a timely manner, then the petitioner has procedurally defaulted his habeas corpus claim. *See Nigro v. Sullivan*, 40 F.3d 990, 997 (9th Cir. 1994) (citing *Francis*, *Francis v. Rison*, 894 F.2d 353, 354 (9th Cir. 1990); *Martinez v. Roberts*, 804 F.2d 570, 571 (9th Cir. 1986)). If a claim is procedurally defaulted, the court may require the petitioner to demonstrate cause for the procedural default and actual prejudice from the alleged constitutional violation. *See Francis*, 894 F.2d at 355 (suggesting that the cause and prejudice test is the appropriate test); *Murray v. Carrier*, 477 U.S. 478, 492, 106 S. Ct. 2639, 2647–48, 91 L.Ed.2d 397 (1986) (cause and prejudice test applied to procedural defaults on appeal); *Hughes v. Idaho State Bd. of Corrections*, 800 F.2d 905, 906–08 (9th Cir. 1986) (cause and prejudice test applied to *pro se* litigants).

### 2. BOP Administrative Procedures

The BOP has established an administrative remedy process permitting an inmate to seek review of an issue relating to "any aspect of his/her own confinement." 28 C.F.R. § 542.10(a). Under that process, an inmate seeking to appeal a DHO decision shall submit the appeal "initially to the Regional Director for the region where the inmate is currently located." 28 C.F.R. § 542.14(d)(2). "An inmate who is not satisfied with the Regional Director's response may submit an Appeal on the appropriate form (BP-11) to

the General Counsel within 30 calendar days of the date the Regional Director signed the response." 28 C.F.R. § 542.15(a). The deadlines contained within this process may be extended upon request by the inmate and a showing of a valid reason for delay. 28 C.F.R. § 542.15(a); 28 C.F.R. § 542.14(b). An appeal is considered filed on the date it is logged in the Administrative Remedy Index as received. 28 C.F.R. § 542.18. Once an appeal is filed, a Regional Director shall respond within 30 days; General Counsel shall respond within 40 calendar days. *Id.* "If the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level." *Id.*

### 3. **Exhaustion in the Instant Case**

Here, Respondent did not comment regarding Petitioner's exhaustion of his administrative remedies. Petitioner began the administrative appeal process after the DHO decision regarding the incident report. Petitioner received a response from the Regional Director; however, it took prison staff a month following that denial to provide Petitioner a copy. *See* Petition (Doc. 1), Rios Ltr. (Doc. 1-1) at 3 (notation in margin regarding return to inmate on December 30, 2020). Petitioner subsequently filed a Central Office Administrative Remedy Appeal but did not receive a response from General Counsel. As such, the Court finds it appropriate to consider "the absence of a response to be a denial at that level[.]" 28 C.F.R. § 542.18; *see also Martin v. Fed. Bureau of Prisons*, 2011 WL 6057608, *2 (C.D. Cal. 2011) ("If General Counsel fails to respond within 40 days, the inmate can assume that the appeal was denied and proceed with a lawsuit"). Additionally, the Ninth Circuit Court of Appeals has recognized that:

> the requirement of exhaustion of remedies [is to] aid judicial review by allowing the appropriate development of a factual record in an expert forum; conserve the court's time because of the possibility that the relief applied for may be granted at the administrative level; and allow the administrative agency an opportunity to correct errors occurring in the course of administrative proceedings.

*Ruviwat v. Smith*, 701 F.2d 844, 845 (9th Cir. 1983). In this case, the factual record is

adequately developed, and nothing in the record suggests that further administrative review would result in any changes. Accordingly, the Court finds the Petitioner's claims exhausted; however, even if the exhaustion is faulty, it shall be excused, and the Court will reach the merits.

### C. Due Process

Petitioner asserts due process violations arising from Incident Report 3421764. *See* Petition (Doc. 1). These alleged violations include 1) the DHO's refusal to allow Petitioner to submit envelopes, legal work, and other examples of his and his mother's handwriting as evidence; 2) Petitioner's finding of guilt was improper because he did not mail the letter and was therefore innocent; and 3) he was found guilty of a disciplinary violation for which he was never accused. Petition (Doc. 1) at 4, 6–7.

#### 1. **Legal Standard**

"Due process in a prison disciplinary hearing is satisfied if the inmate receives written notice of the charges, and a statement of the evidence relied on by the prison officials and the reasons for disciplinary action." *Zimmerlee v. Keeny*, 831 F.2d 183, 186 (9th Cir. 1987) (citing *Wolff v. McDonnell*, 418 U.S. 539, 563–66, 94 S. Ct. 2963, 2978–79, 41 L. Ed. 2d 935 (1974)). Additionally, "[t]he inmate has a limited right to call witnesses and to present documentary evidence when permitting him to do so would not unduly threaten institutional safety and goals." *Id.* (citations omitted). "Where an illiterate inmate is involved . . . [or] the complexity of the issue makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case, he should be free to seek the aid of a fellow inmate, or if that is forbidden to have adequate substitute aid in the form of help from the staff or from a sufficiently competent inmate designated by the staff." *Wolff*, 418 U.S. at 570, 94 S. Ct. at 2981. Finally, inmates have a right to an impartial decision maker. *Id.* at 571, 94 S. Ct. at 2982. "Prison disciplinary proceedings[, however,] are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings do[] not apply." *Wolff*, 418 U.S. at 556, 94 S. Ct. at 2975.

Once the minimal procedural requirements of *Wolff* are met, the district court must ask "whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Superintendent, Mass. Corrections Inst. v. Hill*, 472 U.S. 445, 455–56, 105 S. Ct. 2768, 2774, 86 L.Ed.2d 356 (1985). "[T]he requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board to revoke good time credits." *Id.* "Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." *Id.* Indeed, "[t]he standard is 'minimally stringent' only requiring 'any evidence in the record that could support the conclusion reached by the disciplinary board.'" *Cato v. Rushen*, 824 F.2d 703, 705 (9th Cir. 1987) (citing *Hill*, 472 U.S. at 454–56, 105 S. Ct. at 2774) (emphasis added in *Cato*).

### 2. Petitioner's Disciplinary Proceedings

#### a. Ground One:  Right to submit evidence

Petitioner stated that he "was accused of sending a letter to another inmate and was written a 296 code incident report." Petition (Doc. 1) at 4. Petitioner alleges that "[d]uring the DHO hearing [he] attempted to provide the DHO officer examples of my handwriting and examples of my mother's handwriting to prove that the handwriting on the envelope was not mine and was not my mother's." *Id.* Petitioner asserts that his due process rights were violated, because the "DHO officer refused to allow me to attach envelopes, legal work, and other examples of our handwriting and refused to even look at the evidence [Petitioner] tried to submit." *Id.* Petitioner further alleges that "[t]he DHO officer also refused to let me compare our handwriting to the envelope and to the letter." *Id.*

The Notice of Discipline Hearing Before the DHO indicates that Petitioner declined to call any witnesses or present any documentary evidence. Response (Doc. 12), Estrada Decl. (Exh. "A"), Incident Report No. 3421764 (Attach. "2") at 27, 29.  The DHO Hearing Officer Report similarly reflects that Petitioner did not request any witnesses at the hearing to present documentary evidence. Response (Doc. 12), Estrada

Decl. (Exh. "A"), DHO Rpt. (Attach. "2") at 21–22. At the DHO hearing, Petitioner stated, "I didn't send that envelope." *Id.*, Exh. "A," Attach. "2" at 21, 23. The DHO noted, "[A]lthough [Petitioner] den[ied] the charge against [him], [he] ha[s] provided no evidence to dispute the account of the investigation." *Id.* at 23. The DHO further observed that "TRUVIEW reports show that [redacted] is listed as your mother, and she is located in Vicksburg, Mississippi (the location of the postmark on the envelope)." *Id.*[4] The DHO found that the contents of the letter "d[id] not support a letter coming from your mother to inmate [redacted][.]" *Id.* The DHO also noted that "[s]ending a letter by means of another party, supports mail circumvention that disrupts the monitoring, as you did not send it by direct means." *Id.*

As such, the record reflects that Petitioner did not request any witnesses or a desire to present documentary evidence. *See* Response (Doc. 12), Exh. "A," Attach. "2." Petitioner's wish to provide documentary evidence of his mother's handwriting is not relevant to the charge. The charge identified Petitioner as the author, with "the letter being re-sent from an outside source." Response (Doc. 12), Estrada Decl. (Exh. "A"), Incident Rpt. No. 3421764 (Attach. "2") at 25. The DHO found the contents of the letter did not support Petitioner's mother as the author. *Id.* at 23. In response to Petitioner's habeas petition, the DHO observed that "the handwriting from the envelope and letter (*see* Att. 2 at 17-21) is nearly identical to the handwriting that appears in a court filing in this case from Petitioner (*see* Doc. 1)" . . . which "further support[] [her] findings and conclusions that Petitioner was the author of the envelope and letter." Response (Doc. 12), Estrada Decl. (Exh. "A") at ¶ 15.

As the DHO noted, "[s]ending a letter by means of another party, supports mail circumvention that disrupts the monitoring, as [Petitioner] did not send it by direct means." Response (Doc. 12), Estrada Decl. (Exh. "A"), DHO Rpt. (Attach. "2") at 23. Accordingly, Petitioner's due process rights were not violated as a result of any alleged

---

[4] The return address was that of Petitioner's mother in Vicksburg, Mississippi; however, the postmark was from Jackson, Mississippi.

- 11 -

denial of the presentation of documentary evidence during the DHO hearing for Incident Report Number 3421764.

### b.  Ground Three:  Innocence

Petitioner asserts that his due process rights were violated when the DHO found him guilty of the Code 296 mail abuse violation because he is innocent.  Petition (Doc. 1) at 6.  Petitioner argues that "[t]here was no evidence that [he] wrote the letter or mailed it[;] [i]n fact, the DHO told [him] that [his] name was not in the letter or on the envelope . . . [and] there was no evidence except my mom's name on the envelope."  *Id.*  Petitioner further argues that "this letter and envelope were not hidden or secreted in any manner, they were not bypassed around the mail monitoring procedures, and [he] was never accused of disrupting the monitoring of the mail[,]' [he] was accused of sending a letter – which was not hidden in any manner – to another inmate[,] . . . [which does not constitute] a 296 violation."  *Id.*  Additionally, Petitioner speculates that any reference to "lockdown" could have been about COVID-19 lockdown not about the prison environment.  *Id.*; Reply (Doc. 14) at 3.

The requirements of due process are satisfied if "there is some evidence from which the conclusion of the administrative tribunal could be deduced[.]"  *Hill*, 472 U.S. at 455, 105 S. Ct. at 2774 (quoting *United States ex rel. Vajtauer v. Commissioner of Immigration*, 273 U.S. 103, 106, 47 S. Ct. 302, 303, 71 L. Ed. 560 (1927)).  The record before the Court indicates that Petitioner received written notice of the charges; had the opportunity to call witnesses and present documentary evidence; had a staff representative; and received a statement of the evidence relied on by the prison officials, and the reasons for disciplinary actions.  *See* Response (Doc. 12), Estrada Decl. (Exh. "A"), DHO Rpt. and Incident Report No. 3421764 (Attach. "2").  DHO Estrada relied on the letter and envelope, the written contents of the letter, the facts presented in the written incident report, and the TRUVIEW Inmate Center Report in finding Petitioner "committed the prohibited act of Code 296–Use of the mail for abuses other than criminal activity which circumvent mail monitoring procedures."  Response (Doc. 12), Estrada

Decl. (Exh. "A"), DHO Rpt. (Attach. "2") at 22. DHO White noted that:

> TRUVIEW reports show that [redacted] is listed as your mother, and she is located in Vicksburg, Mississippi (the location of the postmark on the envelope). This letter is addressed to [redacted] who was not housed in your unit at the time, and you cannot directly send mail to this inmate. Sending a letter by means of another party, supports mail circumvention that disrupts the monitoring, as you did not send it by direct means. The contents of the letters do not support a letter coming from you mother to inmate [redacted] as they specifically reference being in an extended lockdown, writing your mom a bunch of times and also stating "it's been over two weeks since I've heard from my mom." If this letter was from your mom, it is not logical that she would write this content in a letter. Lastly, the letter states "I love and miss you. I would give anything to be able to lay down on your chest and have you hold me." This content supports this letter was written by you, and you attempted to send this letter by indirect means in an attempt for inmate [redacted] to receive it.

*Id.* at 23.[5] Petitioner "concedes that [his] mother's name and address [are] on the envelope[,] . . . [and] has no explanation for this at this time." Reply (Doc. 14) at 3. The DHO relied the facts presented in the body of the written report; the letter and the envelope; the contents of the letter at issue; and the supporting documentation which included TRUFONE and TRUVIEW reports in finding Petitioner guilty. Response (Doc. 12), Estrada Decl. (Exh. "A"), DHO Rpt. (Attach. "2") (Doc. 12-1) at 22–24. As such, there is "some evidence" to support the DHO's finding, and Petitioner received the requisite due process.

### c. Ground Four:  Defect in the DHO Report

Petitioner asserts that his due process rights were violated because he was "accused of 'Abuse of the mail for abuses other than criminal activity which circumvents mail monitoring procedures,' by allegedly sending a letter and envelope through the U.S. Postal Service to another inmate[;] [h]owever, the DHO found [him] guilty of using the 'TRULINCS email system in an unauthorized manner' to 'send money to another inmate, contact unauthorized individuals, or to pass illicit messages.'" Petition (Doc. 1) at 7.

---

[5] As noted, *supra*, the return address was that of Petitioner's mother in Vicksburg, Mississippi; however, the postmark was from Jackson, Mississippi.

- 13 -

Petitioner argues that "[t]he DHO violated [his] Due Process rights and found [him] guilty of a violation that I was never accused of violating." *Id.* "Due process in a prison disciplinary hearing is satisfied if the inmate receives written notice of the charges, and a statement of the evidence relied on by the prison officials and the reasons for disciplinary action." *Zimmerlee v. Keeny*, 831 F.2d 183, 186 (9th Cir. 1987) (citing *Wolff v. McDonnell*, 418 U.S. 539, 563–66, 94 S. Ct. 2963, 2978–79, 41 L. Ed. 2d 935 (1974)).

The record before the Court indicates that Petitioner received written notice of the charges; had the opportunity to call witnesses and present documentary evidence; and received a statement of the evidence relied on by the prison officials and the reasons for disciplinary actions. *See* Response (Doc. 12), Estrada Decl. (Exh. "A"), DHO Rpt. and Incident Report No. 3421764 (Attach. "2"). Petitioner was charged with a Code 296 violation for "mail abuse, disrupt monitoring." *Id.*, Exh. "A," Incident Report No. 3421764 (Attach. "2") at 25. The incident report indicated that "an article of U.S. Mail[] was reviewed" and Petitioner was "identified as the actual writer of this letter, with the intended receiver being inmate [redacted] assigned to separate housing unit at USP Tucson, via the letter being re-sent from an out-side [sic] source." *Id.* Code 296 prohibits:

> Use of the mail for abuses other than criminal activity which circumvent mail monitoring procedures (*e.g.*, use of the mail to commit or further a High category prohibited act, special mail abuse; writing letters in code; directing others to send, sending, or receiving a letter or mail through unauthorized means; sending mail for other inmates without authorization; sending correspondence to a specific address with directions or intent to have the correspondence sent to an unauthorized person; and using a fictitious return address in an attempt to send or receive unauthorized correspondence).

28 C.F.R. § 541.3(a), Tbl. 1. DHO Estrada reviewed the incident report, investigation and UDC portions of the disciplinary process, Petitioner's denial regarding sending the envelope, the contents of the letter, the TRUVIEW reports that showed the return address was that of Petitioner's mother, and found Petitioner "committed the prohibited act of Code 296–Use of the mail for abuses other than criminal activity which circumvent mail

monitoring procedures."  Response (Doc. 12), Estrada Decl. (Exh. "A"), DHO Rpt. (Attach. "2") (Doc. 12-1) at 23–24.  Although Section VII of the DHO Report references Code 296 and using "the TRULINC e-mail system in an unauthorized manner[,]" it is clear from the incident report, investigation, UDC hearing, and DHO hearing that the Code 296 violation was premised upon the improper use of the United States mail system.  *See* Response (Doc. 12), Exh. "A," Attach. "2."  The Court finds that Petitioner "receive[d] written notice of the charges, and a statement of the evidence relied on by the prison officials and the reasons for disciplinary action."  *Zimmerlee v. Keeny*, 831 F.2d 183, 186 (9th Cir. 1987) (citing *Wolff v. McDonnell*, 418 U.S. 539, 563–66, 94 S. Ct. 2963, 2978–79, 41 L. Ed. 2d 935 (1974)).  As such, Petitioner's Due Process rights were not violated.

### D.     Ground Two:  First Amendment Retaliation

Petitioner asserts that Incident Report 3421764 was issued in retaliation for his filing of "a lawsuit against the prison and multiple FBOP guards in July 2020."  Petition (Doc. 1) at 5.  Petitioner averred that he "also ha[s] a pending civil lawsuit against several FBOP staff members at USP Tucson, and when the original complaint was filed in that case (Smith v. United States, #4:20-cv-289-SHR), [he] had [his] mother mail the summonses and complaint to the individual FBOP defendants via certified mail[;] [and] [t]o [his] knowledge, most of the summonses and complaints were delivered to the FBOP defendants at the prison on 8/03/2020–the day before [he] was issued this false incident report."  Reply (Doc. 14), Smith Decl. (Exh. "1") at ¶ 8.  Petitioner further averred that "[o]n 8/3/2020 the original summonses and complaint were served on the defendants at the prison via certified mail # 7018 3090 0000 4943 7623."  Petition (Doc. 1) at 5.  "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal."  *Rhodes v. Robinson*, 408 F.3d 559,

567–68 (9th Cir. 2005).

Here, Petitioner fails to state a cognizable retaliation claim because he has not shown how the disciplinary action taken against him did not reasonably advance a legitimate correctional goal. Furthermore, Petitioner cannot demonstrate that the disciplinary action was "because of" the lawsuit. The United States Postal Service ("USPS") tracking history for Tracking No. 7018 3090 0000 4943 7623 shows that it was delivered in Tucson on August 8, 2020. *See* Response (Doc. 12), Mitchell Decl. (Exh. "B"), USPS Tracking (Attach. "1") (Doc. 12-2). This is four (4) days after Incident Report No. 3421764 was issued. Petitioner attempts to rebut this evidence by attaching tracking information for USPS Tracking No. 7018 3090 0000 4943 7616 indicating delivery on August 3, 2020. Reply (Doc. 14), Smith Aff. (Exh. "1"), USPS Tracking (Exh. "3") (Doc. 14-3). Contrary to Petitioner's declaration that his mother mailed the summonses and complaints, USPS Tracking No. 7018 3090 0000 4943 7616 originated in Tucson, Arizona. *Compare id.*, *with* Reply (Doc. 14), Smith Decl. (Exh. "1") at ¶ 8. Additionally, Petitioner's affidavit filed with his Notice of Service indicates that USPS Tracking No. 7018 3090 0000 4943 7616 was directed to the United States Attorney, District of Arizona. *Smith v. United States*, Case No. CV-20-00289-TUC-SHR, Not. of Service (Doc. 19), Smith Aff. (Doc. 19-1) at ¶ 2(a).[6] Accordingly, Petitioner's retaliation claim fails.

### III.  CONCLUSION

Based on the foregoing, the Court finds that the due process requirements as delineated by *Wolff* were met in this case. The Court further finds that the DHO findings were supported by "some evidence" as required by *Hill*. Additionally, the Court finds

---

[6] The Court "retain[s] discretion to take judicial notice of documents 'not subject to reasonable dispute.'" *Trigueros v. Adams*, 658 F.3d 983, 987 (9th Cir. 2011) (quoting Fed. R. Evid. 201(b)). "In particular, we 'may take notice of proceedings in other courts both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue.' *United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992).

Petitioner could not meet his burden to demonstrate a First Amendment retaliation claim.

## IV.    RECOMMENDATION

For the reasons delineated above, the Magistrate Judge recommends that the District Judge enter an order DISMISSING Petitioner's Petition Under 28 U.S.C. § 2241 for a Writ of Habeas Corpus by a Person in Federal Custody (Doc. 1) for lack of jurisdiction.

Pursuant to 28 U.S.C. § 636(b) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, any party may serve and file written objections within fourteen (14) days after being served with a copy of this Report and Recommendation.  A party may respond to another party's objections within fourteen (14) days after being served with a copy.  Fed. R. Civ. P. 72(b)(2).  No replies shall be filed unless leave is granted from the District Court.  If objections are filed, the parties should use the following case number: **CV-21-0133-TUC-SHR**.

Failure to file timely objections to any factual or legal determination of the Magistrate Judge may result in waiver of the right of review.  The Clerk of the Court shall send a copy of this Report and Recommendation to all parties.

Dated this 29th day of March, 2022.

_____
Honorable Bruce G. Macdonald
United States Magistrate Judge